# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TANLEE CHANTE GRANT-DAVIS,

    Petitioner,

v.

MARY DE ANDA-YBARRA, in her official capacity as Field Office Director for Enforcement and Removal Operations, El Paso Field Office, Immigration and Customs Enforcement; TODD M. LYONS, in his official capacity as Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement; SECRETARY, Department of Homeland Security; PAMELA BONDI, in her official capacity as Attorney General of the United States; and WARDEN, Otero County Processing Center,

    Respondents.

No. 2:26-cv-00054-MIS-LF

## ORDER GRANTING RESPONDENTS' MOTION TO DISMISS AND DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

THIS MATTER is before the Court on Petitioner Tanlee Chante Grant-Davis's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition"), ECF No. 1, filed January, 12, 2026. On January 13, 2026, the Court issued an Order Directing Service and Order to Show Cause ("Order"), ECF No. 3. On February 19, 2026, Petitioner filed a Motion for Temporary Restraining Order or Preliminary Injunction. ECF No. 14. On February 24, 2026, Respondents Mary De Anda-Ybarra, Todd M. Lyons, Kristi Noem, and Pamela Bondi ("Federal Respondents") [1] filed a Motion

---

[1] Respondent Warden of the Otero County Processing Center appeared but did not file a response in this case. Instead, she filed a Notice of Joinder in Federal Respondents' forthcoming claims and defenses. ECF No. 7. It has become standard practice in habeas cases for the warden of the relevant detention center to either appear and adopt the federal respondents' arguments, *see, e.g., Intriago-Sedgwick v. Noem*, Case No. 1:25-cv-01065-MIS-LF, Notice of Joinder In USA Respondents' Forthcoming Claims and Defenses, ECF No. 11 (D.N.M. Dec. 3, 2025), or

to Dismiss for Lack of Jurisdiction ("Motion"). ECF No. 20. Petitioner filed a reply on February 25, 2026 ("Reply"). ECF No. 21.[2] Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT** Respondent's Motion to Dismiss and **DENY** Petitioner's Petition for Writ of Habeas Corpus.

## I.  Background

Petitioner is a citizen of Jamaica who lawfully entered the United States on a J-1 visa on May 8, 2022. Pet. ¶ 14, ECF No. 1. Petitioner overstayed her J-1 visa. *Id.* ¶ 72.

In February 2023, Petitioner met Kayshawn Davis, a United States citizen, at an amusement park in Myrtle Beach, South Carolina. Notice of Decision on Form I-130, Petition for Alien Relative, U.S. Citizenship and Immigration Services, June 13, 2025, ECF No. 1-2 at 9 [hereinafter Notice of Decision].  On May 21, 2024, Petitioner married Mr. Davis. Decl. of Tanlee Chante Grant-Davis ¶ 5, ECF No. 1-2 at 4 [hereinafter Grant-Davis Decl.].

In January 2025, Mr. Davis filed a Form I-130, Petition for Alien Relative, with U.S. Citizenship and Immigration Services ("USCIS") on behalf of Petitioner. *See* Receipt of Form I-130, Petition for Alien Relative, ECF No. 1-2 at 34; Grant-Davis Decl. ¶ 11, ECF No. 1-2. On June 12, 2025, Petitioner and Mr. Davis appeared for their interviews with USCIS. Grant-Davis Decl. ¶ 12, ECF No. 1-2. The same day, USCIS denied the Petition for Alien Relative, *id.*, and Petitioner was detained by United States Immigrations and Customs Enforcement ("ICE"), *id.* ¶¶ 1, 14. Petitioner has been detained since. *Id.* ¶¶ 1, 17.

---

not appear at all, *see Francisco v. Dedos*, Case No. 1:25-cv-01229-MIS-GJF, Proposed Findings and Recommended Disposition at 8, ECF No. 53 (D.N.M. Jan. 20, 2026).

[2]      Petitioner also filed a supplement to her reply but offers no federal or local rules permitting such a supplement be filed. *See generally* ECF No. 22.

In its Notice of Decision, USCIS explained that it denied Mr. Davis's Petition for Alien Relative because he failed to meet his "evidentiary burden in establishing the legal validity and bona fides of the claimed relationship and [found] that [Mr. Davis] and [Petitioner] entered into a fraudulent marriage for the purpose of obtaining an immigration benefit." ECF No. 1-2 at 9. In support, USCIS stated that Mr. Davis admitted under oath that he married Petitioner "because she offered to pay [him] $10,000.00 of which $5,000.00 was paid to [him]" and that Petitioner stated under oath "that she offered [Mr. Davis] $10,000.00 of which $5,000.00 was paid to [Mr. Davis] in order to help [Mr. Davis] purchase a vehicle." *Id.* at 8. The Notice of Decision further recounts several discrepancies in their testimony. *Id.* at 9-10.

Petitioner has requested, and has been granted, three custody redeterminations before an Immigration Judge. *See* Orders of the Immigration Judges, ECF No. 1-2 at 22-27. On July 7, 2025, an Immigration Judge denied relief on the following grounds: "Flight Risk: No form of relief; current relief was a fraudulent marriage by admission of the respondent." *Id.* at 22. On August 5, 2025, an Immigration Judge denied relief on the following grounds: "no material changes. Flight risk Respondent is an overstay and admitted to engaging in marital fraud so to gain immigration benefits." *Id.* at 24. Most recently, on December 8, 2025, an Immigration Judge denied relief on the following grounds: "no change in material circumstances and it still clear that respondent engaged in immigration fraud in her marriage to a USC." *Id.* at 26. Petitioner has an appeal pending before the Board of Immigration Appeals ("BIA").  Pet. ¶ 23, ECF No. 1.

On January 12, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief seeking release from detention. *Id.* The crux of her argument is that the Immigration Judges presiding over her custody redetermination proceedings did not properly consider new evidence Petitioner and Mr. Davis provided regarding

the bona fides of their marriage which evidence, allegedly, establishes that she is not a flight risk. *See id.* ¶¶ 19-37.

On February 24, 2026, the Federal Respondents filed the instant Motion to Dismiss the Petition for Writ of Habeas Corpus, ECF No. 20, to which Petition filed a Reply on February 25, 2026, ECF No. 21.

## II. Discussion

Petitioner may bring a habeas claim to the district court since she is in custody. *See Galaviz-Medina v. Wooten*, 27 F.3d 487, 491-92 (10th Cir. 1994); *Ho v. Greene*, 204 F.3d 1045, 1052 (10th Cir. 2000), *overruled in part by Zadvydas v. Davis*, 533 U.S. 678 (2001). She must still, however, meet other habeas requirements like administrative exhaustion. *See Galaviz-Medina*, 27 F.3d at 492.

Petitioner argues that the government presented insufficient evidence to justify bond denial based on her status as a flight risk, therefore her continued detention beyond six months violates due process and she is entitled to release on bond during the pendency of her immigration proceedings. Pet. ¶¶ 38, 53, 60, 85, ECF No. 1. Respondents argue (i) venue and subject matter jurisdiction are improper as to Petitioner's claim of error in "application of the evidence to the legal standard" by the immigration judge (IJ), (ii) Petitioner has not exhausted her administrative remedies as required, and (iii) 8 U.S.C. § 1226(e) bars review of discretionary IJ decisions. Mot. at 1-3, ECF No. 20. Petitioner replies that (i) venue and subject matter jurisdiction are proper because her claim is based partially on her prolonged detention, (ii) exhaustion is futile, and (iii) case law affirms § 1226(e) is not a jurisdictional bar. Reply at 2-9, ECF No. 21.

Petitioner's arguments fail. Her several bond hearings provided her sufficient due process, she has not exhausted her administrative remedies prior to bringing a petition for habeas corpus—

nor has she demonstrated exhaustion is futile, and § 1226(e) bars review of IJ discretionary decisions. The Court denies her Petition for the reasons below.

### A. Petitioner's three bond hearings over the last nine months constitute due process.

First, Petitioner has not been subject to prolonged detention without due process. Petitioner cites three cases purporting to establish that detention beyond six months is presumptively unreasonable, Pet. ¶ 61, ECF No. 1, but fails to recognize that unlike her, the petitioners in all three cases were held without a bond hearing, *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 470-71 (3d. Cir. 2015); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1202 (11th Cir. 2016); *Reid v. Donelan*, 819 F.3d 486, 491-92 (1st Cir. 2016). Petitioner has received at least three bond hearings, the most recent of which was less than four months ago. ECF No. 20-1 at 1-6. An IJ denied bond on all three occasions upon determining Petitioner is a flight risk based on engaging in marital fraud. *See id.* Petitioner cannot claim a lack of due process based on prolonged detention because she has received timely bond hearings.

### B. Petitioner has failed to demonstrate exhaustion of administrative remedies is futile and has failed to exhaust her administrative remedies as required prior to bringing a habeas petition.

Second, Petitioner has failed to exhaust her administrative remedies. In the Tenth Circuit, "[t]he exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, although we recognize that the statute itself does not expressly contain such a requirement." *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) (citation omitted). There is a narrow exception if the Petitioner "can demonstrate that exhaustion is futile." *Id.* (citation omitted).

Petitioner brings this habeas Petition while appeal of her bond decision is pending before the Board of Immigration Appeals (BIA). Pet. ¶ 62, ECF No. 1. She argues exhaustion is futile but

offers only conclusory statements that "[t]he IJ has demonstrated a set intent to maintain the Petitioner's detention," Pet. ¶ 76, ECF No. 1, and "the IJ's persistent error and continuous reliance on a document which reliability has been invalidated by DHS's own FOIA records . . . only serve to confirm futility in this matter," Reply at 7, ECF No. 21. These statements belie her claim to a "good faith effort[]" to exhaust administrative remedies. *Id.* at 8. The Court concurs with Respondents that Petitioner has failed to exhaust her administrative remedies.

**C.  The Court lacks jurisdiction over discretionary bond denial decisions under § 1226.**

**(1) *Section 1226(e) permits only constitutional challenges.***

Finally, Petitioner cannot seek habeas relief based on discretionary bond denial decisions. Petitioner is detained subject to § 1226. *See* Pet. ¶ 43, ECF No. 1. Section 1226(e) states: "the Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." This language permits courts to review the constitutionality of "legislation authorizing [a petitioner's] detention without bail." *See Demore v. Kim*, 538 U.S. 510, 517 (2003) (The "clear text [of § 1226(e)] does not bar respondent's constitutional challenge . . . ."); *see also Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (Observing that "§ 1226(e) does not preclude 'challenges [to] the statutory framework that permits [the alien's] detention without bail.'") (alternations in original); *Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). But this Court lacks jurisdiction under § 1226(e) to review discretionary judgments in bond hearings. *Jennings*, 583 U.S. at 295 ("As we have previously explained, § 1226(e) precludes an alien from 'challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release.'") (alteration in original); *Mwangi*, 465 F. App'x at 787 ("[T]o the extent [the petitioner]

6

challenges the agency's discretionary bond decision, the magistrate judge was correct that the court lacked jurisdiction.").

Here, Petitioner does not challenge the constitutionality of her bond hearing or the statutory framework. Petitioner attempts to frame her argument as an attack on the constitutionality of her detention. Pet. ¶¶ 86-87, ECF No. 1. But the Court finds her argument is properly understood as a request to review the discretionary decision of the IJs—relief that is not available in habeas proceedings under § 1226. Petitioner asks the Court to review whether the IJ properly weighed the government's evidence—specifically the I-130 denial decision—against the Petitioner's evidence. *Id.* ¶ 53 ("[T]he IJ has continuously relied on an allegation that the Petitioner admitted to marital fraud relayed in a single contested document (the I-130 denial decision at Exhibit B) in order to justify its denials of her custody redetermination requests, even after submission of substantial evidence which demonstrated the unreliability of said document['s] contents . . . ."); *Id.* ¶ 85 ("In this case, the IJ's flight risk determination has been grounded on faulty consideration of evidence and improper application of binding legal standards, as discussed above. Consequently, neither community protection nor flight risk applies to the Petitioner."). That is a challenge to the discretionary decision of the IJ, not a constitutional challenge.[3]

**(2) *Petitioner's cases in support are inapplicable and unpersuasive.***

Petitioner attempts to get around § 1226's jurisdictional bar by arguing that whether she is a flight risk is a mixed question of law and fact, permitting review under *Wilkinson v. Garland*'s holding that "[t]he application of a statutory legal standard . . . to an established set of facts is a quintessential mixed question of law and fact." Reply at 8, ECF No. 21; 601 U.S. 209, 212 (2024).

---

[3]     Although Petitioner does contend that the immigration court violated "constitutional mandates" by improperly disregarding "Board precedents" to resolve Petitioner's removal proceedings, that claim does not impact Petitioner's detention. Pet. ¶¶ 56-58, ECF No 1.

But *Wilkinson* does not apply here and Petitioner's other case in support, *Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024), does not stand for what Petitioner claims and is unpersuasive.

(a) Wilkinson *permitted review under different jurisdiction-stripping language and flight risk is not a statutory legal standard.*

*Wilkinson* permits review of a mixed question of law and fact under different jurisdiction-stripping language than that at issue here. *Wilkinson* held that review of mixed questions of law and fact is permissible because § 1252(a)(2)(D) allows review of "questions of law." 601 U.S. 218-19. Therefore, an IJ decision applying facts to the statutory phrase "exceptional and extremely unusual hardship" in 8 U.S.C. § 1229(b)(1)(D) is a reviewable mixed question of law and fact. *Id.* at 221-22.

Conversely, § 1226(e) is not permissive, like § 1252(a)(2)(D), but restrictive. Section 1226(e) bars "review" of a "discretionary judgment." Review under § 1226(e) is limited constitutional challenges to statutory framework, not *every* question of law. *See supra* I.C.1. Petitioner is subject to language that does not permit review of the IJ's bond denial.

Furthermore, *Wilkinson* applies to statutory standards, not simply a list of factors. Petitioner argues that IJs consider the factors from *Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006) to determine flight risk, *see* Pet. ¶ 50, ECF No. 1, and that determining flight risk is a mixed question of law and fact as in *Wilkinson*. Reply at 8, ECF No. 21. The *Guerra* factors, however, are not a statutory legal standard—they were created by the BIA. 24 I&N Dec. at 40. In contrast, "exceptional and extremely unusual hardship" is a statutory standard. 601 U.S. at 211-12. The BIA uses BIA-created factors to make hardship determinations under the statutory standard, but *Wilkinson* does not rest on the factors, it rests on the standard derived from the statutory phrase.

*See* 601 U.S. at 222. Petitioner cites no statutory phrase; therefore, *Wilkinson* does not apply, and a flight risk determination is not a quintessential mixed question of law and fact.

> (b) *Petitioner incorrectly cites* Martinez *to support her assertion that this Court has jurisdiction over flight risk determinations and* Martinez *relies on unpersuasive reasoning.*

Petitioner also cites to *Martinez*, which holds that applying facts to the factors in *Guerra* to determine dangerousness in bond hearings is a mixed question of law and fact which permits habeas review. 124 F.4th at 779. Where Petitioner cites *Martinez* correctly, the Court finds it unpersuasive because it relies on unexplained reasoning.

First, Petitioner incorrectly claims *Martinez* applies to flight risk. Reply at 8-9, ECF No. 21 ("[R]uling that district courts maintain jurisdiction to review questions of whether a person is a flight risk or danger to the community in a court-ordered bond hearing."). It does not. *See Martinez*, 124 F.4th at 782 ("So we must decide whether the BIA's determination that [the petitioner] is a 'danger to the community' is a 'discretionary judgment' or a 'question of law.'").

Second, *Martinez* relies on unsupported reasoning to establish jurisdiction. To find jurisdiction over questions of law under § 1226, so as to establish jurisdiction over mixed questions of law and fact, *Martinez* cites to *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). 124 F.4th at 781-82. *Singh* extended habeas jurisdiction under § 1226 to questions of law by holding the language in *Demore* permitting jurisdiction over "constitutional challenge[s]" and "challenges [to] the statutory framework" under § 1226(e), 538 U.S. at 517, is synonymous with "constitutional claims or questions of law," *see* 638 F.3d at 1202 (citing *Demore*, 538 U.S. at 516-17). This extension is not justified and is unpersuasive.

"Questions of law" is a broad category of which "constitutional challenges" and "challenges to statutory frameworks" are subcategories. A "question of law," per Black's Law Dictionary, could be (1) "An issue to be decided by the judge, concerning the application or interpretation of the law," (2) "A question that the law itself has authoritatively answered, so that the court may not answer it as a matter of discretion," (3) "An issue about what the law is on a particular point; an issue in which parties argue about, and the court must decide, what the true rule of law is," or (4) "An issue that, although it may turn on a factual point, is reserved for the court and excluded from the jury; an issue that is exclusively within the province of the judge and not the jury." *Question of Law*, *Black's Law Dictionary* (12th ed. 2024). For example, "questions of law" in § 1252(a)(2)(D) encompasses the "application of a legal standard to undisputed or established facts." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 227 (2020).[4]

*Singh* gives no justification for why constitutional challenges or challenges to statutory frameworks are synonymous with questions of law rather than subcategories. *See* 638 F.3d at 1202. *Singh* cannot have been interpreting based on the nature of the challenge in *Demore* because that petitioner challenged the "constitutionality of § 1226(c) itself." 538 U.S. at 514. And *Singh* was based on a habeas petitioner alleging constitutional due process violations. 638 F.3d at 1201. *Singh*'s expansive "questions of law" extension appears to have arrived out of thin air. Therefore, the Court finds its use in *Martinez* unpersuasive, rendering unpersuasive *Martinez*'s establishment of jurisdiction, based on the language in § 1226(e), over questions of law and mixed questions of law and fact.

Nonetheless, having established jurisdiction over mixed questions of law and fact, *Martinez* turned to *Wilkinson*. Even if § 1226(e) did permit review, *Martinez* extends *Wilkinson*

---

[4]        This is the holding relied on by *Wilkinson*. 601 U.S. at 217.

without justification. *Martinez* holds that, since applying facts to statutory standards is a mixed question of law and fact, applying facts to *any* list of factors is a mixed question of law and fact. This impermissibly disassociates a list of factors from a statutory standard, which is the threshold requirement in *Wilkinson*. At best, *Martinez* equates a list of factors with a statutory standard but fails to explain why they are equivalent.

*Martinez* holds that "*Wilkinson* compels the conclusion that application of the 'dangerousness' standard is a reviewable mixed question [of law and fact] . . . so long as federal courts can 'assess whether an IJ correctly applied the statutory standard to a given set of facts.'" *Id.* at 783 (citing *Wilkinson*, 601 U.S. at 221).

*Wilkinson*, however, held only that the mixed question depended on interpreting a "statutory standard" like "exceptional and extremely unusual hardship." 601 U.S. at 221-22 (citing *Guerrero-Lasprilla*, 589 U.S. at 234). Although the BIA uses factors to interpret the statutory standard, it is the statutory phrase "exceptional and extremely unusual hardship" that is the threshold requirement. *See id.* at 222. Whether or not BIA uses factors to interpret the statute is immaterial. *See id.*; *supra* I.C.2.a.

But per *Martinez*, it is the list of factors that matter, not the statutory standard. *See* 124 F.4th at 783. *Martinez* states only that the dangerousness standard is based on "nine factors under BIA precedent," 124 F.4th at 783 (citing *Guerra*, 24 I. & N. Dec. at 40). It does not state that dangerousness is a statutory standard. *See generally id. Martinez* gives no reason why multifactor lists do not have to rely on a statute, or why those lists are the same as a statutory standard, but only offers that

> 'dangerousness' is not so different from the 'exceptional and extremely unusual hardship' standard or the 'good faith marriage' standard. All provide multiple factors for an IJ to consider before making the ultimate determination . . . [and they]

11

provide no guidance on what combination of factors constitutes 'exceptional and extremely unusual hardship' or a 'good faith marriage.'

*Id.* at 783-84. Since each of the multifactor lists "grant an IJ broad discretion" they are all "mixed questions of fact and law." *Id.* at 784. Under *Martinez*'s reasoning, if the BIA created a list of factors to interpret its own case law, its decision ceases to be discretionary and can be brought under habeas jurisdiction. That cannot be the case.

Despite this, dangerousness *might* be a mixed question of law and fact under *Wilkinson*'s reasoning because it is a statutory phrase, making the factors a statutory standard. Section § 1226(c)(4) permits the Attorney General to release aliens who "will not pose a *danger* to the safety of other persons or of property." (Emphasis added). But that is not the holding of *Martinez* and furthermore relies on § 1226(e) permitting review of questions of law, not just constitutional challenges and challenges to the statutory framework.

In contrast, "flight risk" does not appear in § 1226. *See generally* § 1226. It is an interpretation of § 1226. *Matter of R-A-V-P-* 27 I&N Dec. 803, 804 (BIA 2020) ("An alien requesting a redetermination of his or her custody status under section [§ 1226(a)] 'must establish to the satisfaction of the Immigration Judge and the Board that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citation omitted). Section 1226(c)(4) permits the Attorney General to release aliens "likely to appear for any scheduled proceeding," which is somewhat analogous to "flight risk." But even assuming that language is close enough to "flight risk" to make the latter a statutory phrase, and the factors a statutory standard, applying *Wilkinson* still requires § 1226(e) permit review of questions of law other than constitutional challenges and challenges to the statutory framework.

**D. Assuming Petitioner is correct that "flight risk" is a mixed question of law and fact and exhaustion of administration remedies is futile, the IJ reasonably denied Petitioner's bond based on flight risk.**

Assuming arguendo that Petitioner is correct that whether she is a flight risk is a reviewable mixed question of law and fact, and exhaustion is futile, the Court finds the IJ did not abuse his discretion in denying bond. The Court assumes proper review of bond denial is abuse of discretion. *See Martinez*, 124 F.4th at 785.

Petitioner claims IJs must consider four factors in determining whether a detainee is a flight risk: (1) whether the detainee has a fixed address in the U.S.; (2) the length of the detainee's residence in the U.S.; (3) the detainee's family ties in the U.S.; and (4) the detainee's manner of entry into the U.S. Pet. ¶ 50, ECF No. 1 (citing *Guerra*, 24 I&N Dec. at 40). That is not correct. *Guerra* lists nine factors to which "Immigration Judges may look . . . in determining whether an alien merits release from bond, as well as the amount of bond that is appropriate." 24 I&N Dec. at 40 (listing: "(1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States."). Petitioner appears to confuse *Guerra* with *Matter of Dobrotvorskii*, which considers factors (1), (2), (3), and (9) in finding DHS met its burden to establish the alien was a flight risk, 29 I&N Dec. 211, 212 (BIA 2025). *See* Pet. ¶ 50, ECF No. 1. But the Court will proceed

13

with Petitioner's four factors, noting that factor (3) is not simply her family ties but whether those ties "may entitle [Petitioner] to reside permanently in the United States in the future." *Id.*; *Matter of Dobrotvorskii*, 29 I&N Dec. at 212.

Reviewing the four factors: (1) Petitioner appears to have a fixed address, though it is contested whether it is shared with Mr. Davis in El Paso or not, *see* Notice of Decision at 10, ECF No. 1-2; Pet. ¶ 36, ECF No. 1; (2) Petitioner resided in the U.S. for thirty-seven months prior to her detention, Pet. ¶ 14, ECF No. 1; (3) Petitioner's only family tie to the United States entitling her to remain is the contested marriage to Mr. Davis, *see* Notice of Decision at 10, ECF No. 1-2 (noting a marriage to Mr. Davis would help both Petitioner and Petitioner's daughter obtain an immigration benefit); and (4) Petitioner entered into the U.S. on a J-1 visa, which she subsequently overstayed, Pet. ¶¶ 14, 17, ECF No. 1.

Furthermore, the IJ weighed the I-130 denial letter against Petitioner's evidence. Pet. ¶ 53, ECF No. 1. The denial letter stated that at the I-130 interviews on June 12, 2025: (i) Mr. Davis stated he married Petitioner "because she offered to pay [him] $10,000.00 of which $5,000.00 was paid;" (ii) Petitioner "admitted under oath, to only having married [Mr. Davis] for the purpose of getting a green card;" (iii) Petitioner and Mr. Davis's accounts of their meeting, relationship, and even their dinner together the night prior contained "many inconsistencies;" and (iv) Petitioner "admitted to having a return flight because she is not living [in El Paso with Mr. Davis]." Notice of Decision at 8-10, ECF 1-2. Petitioner provided as evidence an affidavit by Mr. Davis contesting his admission, Decl. of Kayshawn Marken Davis at 29-31, ECF No. 1-2, an affidavit by Petitioner denying her admission, Grant-Davis Decl. at 4-6, ECF No. 1-2, a partially redacted transcript of one interview of Petitioner on June 12, 2025, which does not contain an admission of marital fraud, R. of Sworn Statement at 39-51, ECF No. 1-2, and "new evidence" including "proof of her

continued residence at her marital address in El Paso, TX" and "substantial joint documentation confirming the good faith of the marriage from inception," Pet. ¶ 36, ECF No. 1. Petitioner claims the IJ failed to place any burden on the government to prove she is a flight risk, but Petitioner provides no support. Reply at 5, ECF No. 21.

The IJs denied Petitioner's bond because they found "current relief was a fraudulent marriage by admission of [Petitioner]," "[Petitioner] is an overstay and admitted to engaging in marital fraud so to gain immigration benefits," and "it is still clear that [Petitioner] engaged in immigration fraud in her marriage to a [U.S. citizen]." ECF No. 20-1 at 1-6.

Considering the evidence before the IJ and the four factors above, the Court finds the IJs did not abuse their discretion in finding Petitioner a flight risk based on fraudulent marriage.

### E. Conclusion

In sum, Petitioner has received due process, has not exhausted her administrative remedies, and the Court lacks jurisdiction to review the discretionary decisions made in her bond hearings. The proper course for Petitioner to contest the IJs' weighing of evidence is an appeal to the BIA. 8 C.F.R. § 1003.38. Petitioner has an appeal pending. Pet. ¶ 62, ECF No. 1. And, even if the Court could review the IJs' discretionary decisions, the IJs did not abuse their discretion in denying bond.

For the foregoing reasons, **IT IS HEREBY ORDERED** that,

1. Respondents' Motion to Dismiss is **GRANTED** consistent with this order; and

2. Petitioner's Petitioner for a Writ of Habeas Corpus, ECF No. 1, is **DISMISSED** for lack of jurisdiction or alternatively **DENIED** on the merits.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

15